Good morning. I'm Paige Nichols, here on behalf of Matthew Clark, the appellant. May it please the court, I'd like to focus mostly this morning on our issue number one, which is the claim that Mr. Clark's methamphetamine sentence was substantively unreasonable. And I'll start with the presumption of reasonableness. I'd like to focus attention for just a moment on a couple of passages in Rita where the Supreme Court held that circuit courts may apply a presumption of reasonableness to within guideline sentences. Rita gives us several justifications for that case involving actual or ice purity methamphetamine. One of the things Rita said, there are two justifications I just want to pull out about Rita and then I think that will help get us into this particular case. So one of the justifications that Rita gave for the presumption of reasonableness was it's the Supreme Court's understanding at that point in time that the Sentencing Commission had taken an empirical approach to the guidelines. And so that empirical approach helps assure us that those guidelines are reasonable. Well down the road a bit, the Supreme Court comes back in Kimbrough and recognizes that well, the Commission didn't actually take that empirical approach when it came to drug guidelines. So the presumption maybe has a weaker justification generally in drug cases. But when it comes to methamphetamine cases, one of the other points that the majority made in Rita was this. It may well be true, the court says, that this presumption will encourage district courts to impose guideline sentences. But that's a good thing because the guidelines are designed to assure, to ward against unwarranted disparities and to encourage uniformity in sentencing. And that makes sense and it might have made sense in the early days of the methamphetamine guidelines. But as the methamphetamine trade, shall we say, has changed over time and as district courts have learned more about that particular drug, we come to where we are today, which is not uniformity in methamphetamine sentences. And not, especially not uniformity in whether or not drugs are tested and whether or not the drugs are treated as pure or as a mixture at sentencing. So those are two reasons that Rita gave for the presumption that are really weakened in a case involving purity and methamphetamine. So I've asked this court to, I think I worded it as, disregard the presumption in cases involving actual or ice methamphetamine. I think there are really three ways the court can look at it. I believe that a panel does have the authority to shape a general rule. The general rule is that this court applies the presumption. So I've asked essentially for the court to make an exception in methamphetamine cases. I think another way to look at it is to hold that, given what we know now about methamphetamine sentencing, that the presumption is simply rebutted in cases involving purity level guidelines. Or the court could simply find that Mr. Clark rebutted the presumption in this case because of the multi-prong challenge, not just disparity, but multi-prong challenge he brought to the guideline in the district court. Discuss why you think what we've learned about meth suggests that there should be an exception here. What have we learned about meth in recent years that suggests that the guidelines are too harsh? Yes, so there are, I think, at least three different specific distinct arguments that were made in the district court. And I don't want them to get all smashed into disparity. So I want to make sure I cover all of them. But the disparity has come about, it appears, maybe simply as district courts have become dissatisfied with the guideline. But what has happened, so before 2010, I think it's pretty clear, especially before 2007, that methamphetamine purity varied quite a bit. And it wasn't that high, usually. But since 2010, the evidence is that most methamphetamine is very pure. At 93% or above, that puts it at an ice level, that puts you way higher in the sentencing guidelines than like 20 years ago, you might have 47% purity would be usual in a case. Even though the purity levels have gone up, you should expect to see the guidelines should have gone up across the board, too, as purity has gone up. But they haven't. Guidelines go up or the sentences go up? Sorry, yes, sentences. Thank you. I appreciate that. The sentences should go up. But they have remained pretty much steady across the board. Meanwhile, what's happened in methamphetamine cases is fewer and fewer courts are imposing guideline sentences. So then you have the Kansas experience. And we know a lot more within Kansas because Judge Robinson took the trouble to ask probation to review all of these pre-sentence reports and determine that even within Kansas, we have a disparity because it looks like what's happening is Kansas City tests more. And the sentences in Kansas City are for actual or ice methamphetamine above 90% of the time, whereas in Wichita, it's only 50 some percent of the time and in Topeka, it was 40 some percent of the time. And it looked like the testing rose and fell with the sentences. So there's a lack of the point. It seems to be geography. And in struggling to figure out the... Was there any other factor taken into account there? Did they look at other quantities, whether the person looked like he was a major dealer, the size of the operation, where the defendants stood, or did they just look at the one factor and determine sentences? We, the defense, do not have the information. And it was not examined in the reports that we were provided through the probation department. So we're in an awkward position here because we are the only players here who don't have access to the PSRs. The government has them, the probation office has them, and the court has them. So unfortunately, it went... I think Judge Robinson did a great job of digging as far as she did. And then she just talked with counsel a bit about sort of the culture in the different offices and determined that there may be some differences in types of cases in Kansas City, but she concluded that it didn't fully explain this at all because there are similar long investigation cases, for instance. It takes longer in Kansas City to get from charging to sentencing. So they was not satisfied that that explained the disparities. So I think her conclusion was that this is not an explained disparity. And as for other regions, we don't know, except that if you look at, for instance, they were talking a lot about San Diego, where you would expect there would be a lot of pure methamphetamine coming in from the border, and they are much less likely to be... much more likely to be sentencing for a mixture there. They also have some fast track programs there, which may account for that. But then we look again at the compare methamphetamine within guideline sentences to across the board. You look at the Sentencing Commission statistics. Across the board, it's about 50% of sentences are within guideline sentences. And methamphetamine, it's only 30, like 30 point something percent. It's like 50% of drugs in general, you're saying? Guidelines, across the guidelines board. So the cases sentenced within a guideline range in 2017, according to the Sentencing Commission statistics, were 49.1, were within a guidelines range. For methamphetamine, 30.3. So a much lower number in methamphetamine cases. What about in other drug cases? Do you have the figures for other drug cases? Yes. So there's a higher percent, for instance, in marijuana cases within guidelines range, 47.1 as compared to the 30 in methamphetamine. But wait, why is the guideline sentence within guideline range the relevant fact from what you're... when the question you're talking about is how is the guideline range determined? Whether you use mixture guideline or the purity guideline? Right. So we can't... I think with the Sentencing Commission data, what it tells us, I guess, is that we have way fewer than half of defendants in methamphetamine cases being sentenced within the guidelines. But why is that relevant to your issue here? Right. So whenever you have a defendant who's sentenced to the guidelines, that person is automatically in the minority of defendants being sentenced within the guidelines. So there's a disparity just in terms of... and I understand, I think, maybe Your Honor is getting at the fact that we just don't know that many details about why there are so few guideline sentences in methamphetamine cases. Yeah. But your problem... you would not have a problem, as I understand your argument, if the guideline had been calculated using the mixture guideline. True. So I've got some... I think that's because the mixture guideline gets us to what is, for other reasons, an appropriate sentence for this defendant. So this is part of the problem with this sentence here. And with... so it's tough to argue what makes a substantively unreasonable within-guideline sentence, because we don't have a lot of guidance on that, because... You have a lot of guidance in it. We have a lot of guidance on what... Which says you can't. Right. That's true. So what I... I sent a letter of additional authority in on the recent opinion in Cookson, which I recognize that's a below-guideline sentence case, but it gives us a little help, because Cookson reminds us that an excessive reliance on a single factor can be problematic. And that's what we have here, and we're even getting caught up in this discussion right now, or at least I am, on focusing on the guideline, when in And so that's one of our arguments, is that the court excessively relied on this guideline. I don't see... I guess I don't see that, and maybe I'm not understanding your argument. But it did seem like Judge Robinson went out of her way to say, you know, to hear all this and to inquire, and as you say, she did some digging. But at the end of all that, she said, you know, I'm not saying I might not do something in another case, but then she very carefully went through the reasons why in this case she wasn't going to bite off on this argument. And I don't see how we can say that's an abuse of discretion. So let me try to get at it from a couple of different angles. And one of them is, you can... I appreciated Judge Robinson's really struggle through this case, because I think it is one of the hardest things judges do, is sentencing. And the Supreme Court has given really mixed messages by saying, on the one hand, look, like Rita says, the guidelines, they're just a factor, they're just one of many factors, and this court has said it should be a holistic balancing of all the factors, right? But at the same time, the Supreme Court also says it's the anchor, it's the place you start, and so it's hard to get away from the guidelines. But one of the things that Judge Robinson said was, I invite you to appeal this issue, because I don't know if this is really a problem across the board or not. And she also said, come back if the guidelines change, because I will want to be sentencing you to a lower sentence then. And so if we just start with the umbrella principle of it seems difficult to understand how it can be true at the same time that a 17-and-a-half year guideline sentence is not greater than necessary, while at the same time the judge says that in the future some lesser number of years will be sufficient to achieve our sentencing goals. Depending on the facts of that case. I mean, that's seemingly what she said. I mean, she was looking here at the level of sophistication, in particular, of this operation, and the firearms that were found, and the assault rifle, and the ammunition, and all of those things, and his prior criminal history, and so she focused on that. And I guess I've got one question I want you to address before I forget about it here and you're almost out of time, and that is that the State concedes that we need to resentence on, they suggest a correction is needed on counts four and five. Why would we even get to this substantive reasonableness argument? Why wouldn't we remand so the District Court can reconsider the whole package and perhaps, you know, even reconsider this issue? I mean, the point being, why aren't you just arguing for remand at this point in light of the State's concession? I think that does make sense. Would you prefer that we went ahead and decided the substantive? No, I would, as long as we have a remand that makes it clear that the District Court is free to revisit the entire package. Well, that's what we generally say when we remand. Right, it is. The government had also suggested that, no, it can just be a correction of the journal entry. They suggested that, but do you agree with that is what I'm asking. I am agreeing with Your Honor that it makes sense to do a general remand, especially given how the government has also argued that the guns were played a part in the reasonableness of the sentence, and, you know, when you have grouping but you also have a separate gun count, it becomes complicated to know just how much played into the guideline sentence in that whole sentencing package. So it does make sense to me. When you say a general remand, that includes the possibility of a harsher sentence. It does. Okay. I don't believe there will be evidence to support a harsher sentence here. Well, you don't need new evidence to support a harsher sentence. She can just exercise her discretion in a different way, can she not? She could decide. I think there has to be. She can re-think about it and go over the guidelines. Yeah, I mean, I have, I would not at all expect vindictive resentencing here, but I think the law on resentencing is that there would, I think there would have to be some additional evidence. I'm obviously taken a little by surprise at that suggestion. I mean, I recognize that that resentencing is open. Okay. Yes. I just want to make sure you realize that that is a possibility. Yeah. Okay. Thank you. I'll give you a minute later on, so don't worry about it. Thank you. Good morning, and may it please the court. Amanda Harris on behalf of the United States. I'll start where my colleague began, which is the presumption of reasonableness. Can you start with where she ended? Happy to do that as well. Just because, I mean, is it true that we should just remand and not address all the other complicated issues? No, Your Honor, I don't think that's the correct recourse here for a couple of reasons. The first of which, we only conceded that there should be a remand on counts four and five. I understand the doctrine of a sentencing package, but the court was clear about its other counts, which are not at issue with regard to exceeding the statutory maximum. I don't understand your argument there. The sentencing package doctrine seems to apply here, where we've got multiple counts that have been sentenced on and we're vacating on two counts. Why isn't the court free to reconsider the entire package, and why doesn't that apply here? Why would we just correct? I think it was a clerical error, and here is why. At volume two, page 52, the court recites the correct statutory maximum sentences for each count, including counts four and five. So it was clear there was just an oversight on the court's part for not having imposed a lower sentence on counts four and five, rather than just reciting its sentence, which would apply to the counts except for the 924C. So if four and five are corrected, what would that do to the overall sentence? It would remain unchanged, because 210 months would remain for counts one and two. The 60-month sentence would remain on count three, which is the mandate. And what would happen on four and five? And four and five would be reduced to the statutory maximum sentence. But then the judge on general remand could decide, I thought the original sentence was an appropriate overall sentence. So you're eliminating that possibility. That's correct, Your Honor. If the court believes that this is part of the sentencing package doctrine, we just think that this is a mere clerical error. And the easiest thing to do is to correct those errors. But if the court disagrees, of course the court would be well within its discretion to impose the exact same sentence that it did here. And then I suppose that could be appealed. But there's no point of having a second appeal on the same issue, because the court would very likely just impose the same sentence that it already did impose, because there would be no... Already it implicitly intended to impose. That's correct. I think the court was aware of what it was considering with all these different counts and chose a sentence of 210 months with regard to the counts that were not the 924C counts, so counts 1, 2, 4, and 5. And it just made a mistake in imposing the 210-month sentence for counts 4 and 5. So the appropriate thing would do a limited remand on those counts to correct that error. But even assuming that's not the case, of course the court would be well within its discretion to impose the same sentence. I'll go back to the substantive unreasonableness challenge here and start with the presumption of reasonableness. We recognize that we didn't cite that standard in the government's brief, and that was an oversight on our part. But the presumption of reasonableness applies across the board in this circuit, regardless of the type of case. And so it's foreclosed by this court's precedent. For example, in United States v. Wireman, 849 F. 3rd 956. This court explicitly recognized in this circuit a within guideline range sentence that the district court properly calculated is entitled to a rebuttable presumption of reasonableness on appeal. And this presumption of reasonableness holds true even if the guideline at issue arguably contains serious flaws or otherwise lacks an empirical basis. And that's the same argument that's being asserted here for why the presumption shouldn't apply. And thus this panel is bound by its prior precedent. But regardless of whether there was a presumption of reasonableness in this case, the sentence here was reasonable, and there was no abuse of discretion for all of the reasons cited by the district court. Before you go on to that, could you address your opposing counsel's argument that the presumption was rebutted? Of course, and that would be as to why, with or without the presumption, that this sentence was substantively reasonable. The court spends about 13 transcript pages explaining why it was declining to vary below the guidelines in this case and why the sentence was appropriate on the facts in the 3553A factors. So I guess my question is, does it matter if we say that the presumption doesn't apply or that it was rebutted to you? Of course, we don't want the court to say that. And that's the point, that the presumption applies, right? And so the only thing this court can consider, I think, under its precedent, is whether the presumption is rebutted. Okay, thank you. And in this case, the court examined all of the many factors, including the very serious nature of this offense. As this court is aware, there's a number of firearms. There was video surveillance footage of Mr. Clark handling those firearms. His own surveillance system showed that. His own surveillance system also showed him distributing drugs the night before the execution of the search warrant, the quantity of drugs and the amount of cash found, as well as the search warrant of his telephone which showed that he had been distributing drugs for some time, as well as the trash pulls which also corroborated that evidence. So the district court here was very concerned about the serious nature of this offense. And that's why the court decided in this specific case there was no need to throw out the guidelines altogether because they were helpful on the facts of this case. And that's well within the court's discretion. That's why we filed a 28-J letter citing that Seventh Circuit case because courts, of course, may, post-Kimbrough, consider these problems or underpinnings of the guidelines which defendants can argue to the courts. But they are never required to accept those arguments. And here the court recognized them but just felt that they weren't relevant on the facts of this particular case. And that's well within her discretion to do so. In addition to all that, the court also considered and rejected the other basis for a variance in this case which included Mr. Clark's age and likelihood of recidivism, for example. The court explicitly found that Mr. Clark wasn't at low risk for recidivism because of his prior criminal history which began as a juvenile and continued pretty steadily thereafter. So the court considered all of these things and also, I would note, recognize that the guidelines is one of many factors that it was considering. And so the court knew that it wasn't bound by the guidelines and explicitly recognized as much. And under these facts, the sentence was not an abuse of discretion. And I briefly want to address one other thing. I think the comments that the district court made about re-opposing a different sentence if the methamphetamine guidelines are changed later down the road and applied retroactively, the court was merely recognizing what the Supreme Court has said which is that the guidelines are the lodestar at sentencing. And that doesn't show at all that the court felt it was bound by these guidelines or wasn't recognizing potential disparities that result from some of these, whether or not methamphetamine is tested. The court has no further question. We respectfully request that this court affirm on counts 1, 2, and 3 and remand with limited instruction to it re-impose sentences on counts 4 and 5. Thank you. Thank you. Just very quickly on the court recognizing that the guidelines are the lodestar and so forth. Right. I think this is the difficulty I have in understanding what it is that district courts are supposed to do. But I don't think they're supposed to. I know they have to calculate the guideline. I know that's a factor. That's right. And the court did that and the court did that appropriately. But then what happens is the court takes that number and then walks through the claims. Methamphetamine is sentenced too harshly as compared to other drugs. And here are a whole bunch of studies to explain that to you and the government hasn't rebutted any of them. And the judge just kind of sets it aside. That's a policy issue, not a reason to vary. What do you mean by too harshly compared to other drugs? So in terms of harm to the person and harm to society, there are epidemiology studies that were cited at length in the sentencing memorandum that were under the court's consideration. For instance, methamphetamine and crack cocaine used to be sentenced at the same level. Crack cocaine sentences were ameliorated. Methamphetamine was not. And it's sentenced more harshly than other drugs like heroin and fentanyl that have greater harms shown according to epidemiologists. Harm to the individual? Both, and society, both, yes. And then the recidivism study, the judge says, you know, I'm not going to find that he's at low risk or at high risk. That's not a reason to vary. So what happens is, and I think it happens a lot, and I guess what I'm struggling with is, how are the guidelines not being given too much weight when that's the number on the table and all you're doing is trying to move the judge off of that number? And that's exactly what happened here. Now let me ask you a question about what you would like done. If we decided, for example, that the sentence was substantively reasonable, would you still like the sentence remanded for full consideration? Absolutely. Rather than just have the other two counts reduced? Yes, because under Pepper, when you go back for a new sentencing, the judge sentences the defendant as if you are before me in everything in your life up to this point. So that would include his incarceration term. And this is somebody who the judge recognized had done a great job in pretrial detention. And so his good conduct in prison would be relevant at that point. Also, the judge could take into account the fact that more district courts have been rejecting the guidelines. I'm going too long. Thank you very much. Thank you. Thank you, counsel. Case submitted. Counselor excused. We're going to take a very brief recess before we go to our last case.